**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| DENNIS R. RUSSELL, | DOCKET NUMBER |
| Appellant, | PH-0432-13-0335-I-1 |
| v. | |
| DEPARTMENT OF THE ARMY, | DATE: December 16, 2014 |
| Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>David Fallon</u>, Esquire, Albany, New York, for the appellant.

<u>Rick Pizur</u>, Tobyhanna, Pennsylvania, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1 The agency has filed a petition for review of the initial decision, which reversed the appellant's performance-based reduction in grade. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review.  Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision.  5 C.F.R. § 1201.113(b).

## DISCUSSION OF ARGUMENTS ON REVIEW

¶2        The appellant was employed as a GS-11 Supply Systems Analyst when the agency reduced him in grade to the position of GS-07 Supply Technician using the procedures set forth in 5 U.S.C. § 4303.  Initial Appeal File (IAF), Tab 1 at 21, Tab 5 at 6-21.  The agency determined, at the conclusion of the appellant's performance improvement plan (PIP) of over 60 days, that his performance remained unsatisfactory.  IAF, Tab 5 at 9.

¶3        The appellant had previously filed an equal employment opportunity complaint alleging discrimination based on race (African-American), disability (degenerative joint disease of both legs), and reprisal.  IAF, Tab 6 at 15-18.  He subsequently amended the complaint to include the reduction in grade.  *Id*.  The agency issued a final agency decision denying the appellant's claims.  *Id*. at 19-31.  The appellant appealed the reduction in grade to the Board under mixed-case procedures.  IAF, Tab 1.  After holding a hearing, the administrative judge reversed the agency's performance-based reduction in grade because the agency failed to demonstrate by substantial evidence that it communicated or

applied a valid performance standard under which the appellant's performance would be measured during the PIP. Hearing Compact Disc (HCD); IAF, Tab 33, Initial Decision (ID) at 11.

¶4    The agency filed a timely petition for review. Petition for Review (PFR) File, Tab 1. In its petition for review, the agency argues that the administrative judge erred when he found that it required the appellant to perform at the "fully successful" level during the PIP. *Id*. at 8. The agency further argues that it was made clear to the appellant that all he had to do to overcome the PIP was "to adopt more positive and cooperative methods of communication with all whom you interact" and that the minimum required level, although a subjective standard, was "reasonable, realistic, and attainable by [a]ppellant." *Id*. at 8-9. The appellant has responded in opposition. PFR File, Tab 6.

Validity and Communication of Performance Standards

¶5    In a performance-based action under chapter 43, an agency must establish by substantial evidence[2] that: (1) the Office of Personnel Management approved its performance appraisal system; (2) the agency communicated to the appellant the performance standards and critical elements of his position; (3) the appellant's performance standards are valid under 5 U.S.C. § 4302(b)(1); (4) the agency warned the appellant of the inadequacies of his performance during the appraisal period and gave him a reasonable opportunity to improve; and (5) the appellant's performance remained unacceptable in at least one critical element. *White v. Department of Veterans Affairs*, 120 M.S.P.R. 405, ¶ 5 (2013). Performance standards are not valid unless they set forth a minimum level of performance that an employee must achieve to avoid performance-based action. *Henderson v. National Aeronautics & Space Administration*, 116 M.S.P.R. 96, ¶ 9 (2011). Under certain performance appraisal systems, performance of a critical

---

[2] Substantial evidence is the "degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree." 5 C.F.R. § 1201.56(c)(1).

element may fall between "fully successful" and "unacceptable."  5 C.F.R. §§ 430.207(c), 430.208(d).  However, under such systems, only the lowest rating level of "unacceptable" (or its equivalent) will support an agency action under chapter 43.  *See Van Prichard v. Department of Defense*, 117 M.S.P.R. 88, ¶ 14 (2011), *aff'd*, 484 F. App'x 489 (Fed. Cir. 2012).

¶6        We agree with the administrative judge that the agency failed to show by substantial evidence that its performance standards were valid because the appellant was not notified of the standard for performing at the minimum level in each objective.  In its regulations, the agency developed a four-tiered system for measuring each individual objective with the standards of "Excellence," "Success," "Needs Improvement," and "Fails."  IAF, Tab 12, Subtab 8 at 7.  An overall "Fair" rating is assigned when an employee receives "Needs Improvement" in one or more objectives and is not rated "Fails" in any other objectives.  *Id*.  An "Unsuccessful" rating is assigned for an employee who fails in one or more objectives regardless of the ratings assigned to other objectives.  *Id*.  The appellant's February 2012 Senior System Civilian Evaluation Report Support Form stated that the performance standards were written at the "Success" level, however, the form did not include information about the requirements for achievement of other ratings.  IAF, Tab 6 at 44-46.  Similarly, the performance objectives (as opposed to performance standards) on this form did not provide for criteria for meeting the objectives at various performance levels.  *Id*.  The appellant thus was not notified of how to meet varying performance levels for each standard and consequently how to meet the performance levels for his overall rating.  The agency's performance standards are therefore invalid.  *See Henderson*, 116 M.S.P.R. 96, ¶ 16.

¶7        Although, in order to be valid, performance standards must set forth the minimum level required to avoid a performance-based action, an agency may cure invalid performance standards by communicating sufficient information regarding performance requirements at the beginning of, and even during, a PIP.  *See*

*id.*, [116 M.S.P.R. 96](#), ¶¶ 16, 18.  We agree with the administrative judge that the agency failed to cure its defective standards because it did not communicate to the appellant that he needed only to improve to the "Needs Improvement" level and it did not sufficiently describe how he could improve his performance to avoid a performance-based action.  In the Notice of 60 Calendar Day Performance Improvement Plan, the agency specified three major performance objectives in which the appellant was failing and stated that, "to improve your performance in this objective to a minimum level of success," it is necessary "to adopt more positive and cooperative methods of communication with all whom you interact."  IAF, Tab 5 at 6-7.  The agency gave the appellant 60 calendar days to demonstrate that he was working at an "acceptable and successful performance level" with respect to the objective.  *Id*. at 7.  It is not clear to which of the three major performance objectives the agency referred when it required the appellant to perform at a successful performance level or whether the agency was referring to his communication skills.  However, it is clear that the agency did not specify the minimum level of performance that was required for the appellant to avoid a performance-based action.

¶8        After the conclusion of the PIP, the agency informed the appellant that "despite being provided . . . time to improve you[r] performance to a satisfactory level, your performance has not improved and remains unsatisfactory."  *Id*. at 9. The Notice of Proposed Reduction in Grade stated that the appellant's performance remained unsatisfactory, including unacceptable performance in the three performance objectives, but did not specify to what level he would have needed to improve his performance in order to avoid the reduction in grade.  *Id*. at 10-16.  The Notice of Decision in Reduction in Grade similarly did not provide notice of the required performance level.  *Id*. at 18-21.

¶9        The hearing testimony further supports the finding that the agency did not communicate the proper standard of performance to the appellant.  *See* HCD.  The proposing official testified that the appellant did not have to be 100% successful

and that the appellant was only required to improve his communication skills and attitude in order to succeed under the PIP. *Id.* However, despite repeated opportunities to do so, none of the agency witnesses testified that the appellant was required to improve only to the "Needs Improvement" level, nor did they testify that this was communicated to him. *Id.*

¶10    The agency argues that the administrative judge erred because the appellant was clearly informed that he merely had to meet the subjective standard of improving his communication skills and attitude in order to avoid a performance-based action. PFR File, Tab 1 at 8. We do not agree, however, because the PIP clearly refers to performance objectives with measurable goals such as timelines for processing inventory adjustments under objective (1) and meeting suspense dates under objective (2). IAF, Tab 5 at 6. We therefore find that the agency improperly failed to communicate to the appellant what he needed to do in order to avoid a performance-based action. *See Van Prichard*, 117 M.S.P.R. 88, ¶ 14. Assuming, however, that the appellant needed only to improve his communication skills and attitude, such an objective is invalid because it does not describe in sufficient detail what is required of the appellant and how it will be measured. *See Johnson v. Department of the Interior*, 87 M.S.P.R. 359, ¶ 6 (2000) (standards must be sufficiently precise and specific as to invoke a general consensus as to their meaning and content and provide a firm benchmark toward which the employee may aim performance).

¶11    Accordingly, we find that the agency neither developed valid performance standards nor cured defective performance standards by communicating the standards to the appellant. *See Henderson*, 116 M.S.P.R. 96, ¶¶ 16, 18. Because the agency has not shown that its performance standards were valid, the appellant's reduction in grade cannot be sustained. *See Van Prichard*, 117 M.S.P.R. 88, ¶ 24 (the Board will not consider charged performance deficiencies absent valid performance standards).

Affirmative Defenses

¶12     Finally, we do not disturb the administrative judge's findings regarding the appellant's affirmative defenses.  Because we do not sustain the agency's action, we agree with the administrative judge that it is not necessary to address the appellant's general contention of harmful procedural error as it is not outcome determinative.  *See Taylor v. U.S. Postal Service*, 75 M.S.P.R. 322, 328 (1997) (declining to address a harmful procedural error claim after finding that the agency failed to prove its charge).  On review, the appellant does not challenge the administrative judge's findings that he failed to establish his affirmative defenses of discrimination based on race (African-American), disability (degenerative joint disease of both legs), or reprisal.  ID at 12-13.  We discern no error in the administrative judge's conclusions regarding the appellant's affirmative defenses, and therefore we leave those findings undisturbed.

**ORDER**

¶13     We ORDER the agency to cancel the appellant's reduction in grade and to retroactively restore the appellant to the position of Supply Systems Analyst, effective October 28, 2012.  *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984).  The agency must complete this action no later than 20 days after the date of this decision.

¶14     We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision.  We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order.  If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶15     We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it took to carry out the Board's Order.  The appellant, if not notified, should ask the agency about its progress.  *See* 5 C.F.R. § 1201.181(b).

¶16     No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order.  The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency.  5 C.F.R. § 1201.182(a).

¶17     For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached.  The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

**NOTICE TO THE APPELLANT REGARDING
YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set out at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.  You

must file your attorney fees motion with the office that issued the initial decision on your appeal.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request further review of this final decision.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC).  *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)).  If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States

district court. *See* 5 U.S.C. § 7703(b)(2). You must file your civil action with the district court no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.


FOR THE BOARD:                        _____
                                      William D. Spencer
                                      Clerk of the Board

Washington, D.C.

|  | **DFAS CHECKLIST**<br><br>**INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD** |
|---|---|

AS CHECKLIST: INFORMATION REQUIRED BY IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc, with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

   a. Outside earnings with copies of W2's or statement from employer.
   b. Statement that employee was ready, willing and able to work during the period.
   c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



## NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a.  Employee name and social security number.
   b.  Detailed explanation of request.
   c.  Valid agency accounting.
   d.  Authorized signature (Table 63)
   e.  If interest is to be included.
   f.  Check mailing address.
   g.  Indicate if case is prior to conversion.  Computations must be attached.
   h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

## Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2.  Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3.  Outside earnings documentation statement from agency.

4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.

5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)
   a.  Must provide same data as in 2, a-g above.
   b.  Prior to conversion computation must be provided.
   c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.